IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MICHAEL J. GOINS                                                                    PLAINTIFF

v.                                    Case No. 4:25-cv-00168-KGB

COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION                                    DEFENDANT

## ORDER

Before the Court are the Proposed Findings and Recommended Disposition ("Recommendation") submitted by United States Magistrate Judge Joe J. Volpe (Dkt. No. 11). Plaintiff Michael J. Goins filed objections (Dkt. No. 14). After careful consideration of the Recommendation and Goins's objections, and after a *de novo* review of the record, the Court adopts the Recommendation as this Court's findings of fact and conclusions of law in all respects (Dkt. No. 11). The Court writes separately to address Goins's objections.

### I.    Background

In January 2022, Goins applied for disability insurance benefits under Title II of the Social Security Act ("Social Security Act") (Dkt. No. 6, at 198). Goins alleged that he became disabled in January 2020 due to rheumatoid arthritis, joint swelling and pain, and depression (*Id.*, at 197). In April 2024, an administrative law judge ("ALJ") issued a decision finding that Goins was not disabled under the Social Security Act (*Id.*, at 18–28). Goins appealed and the appeal was denied (*Id.*, at 6). The ALJ's decision, therefore, became the final decision of the Commissioner of Social Security (*Id.*). Goins then filed this action pursuant to 42 U.S.C. § 405(g) (Dkt. No. 2).

### II.    Legal Framework

A person's disabled status under the Social Security Act is considered using a five-step sequential analysis: (1) if the individual is doing substantial gainful activity, he will not be found

to be disabled; (2) if the individual does not have either a severe medically determinable physical or mental impairment that meets a duration requirement or a combination of severe impairments meeting a duration requirement, he will not be found to be disabled; (3) if the individual's severe impairment meets or equals a listed impairment, he will be found to be disabled; (4) if the individual can still do his past relevant work, he will not be found to be disabled; and (5) if, based on the individual's residual functional capacity, age, education, and work experience, the individual can make an adjustment to other work, he will not be found to be disabled.  20 C.F.R. § 404.4520(a)–(g);  20 C.F.R. § 416.920(a)–(g).

The factual findings by the Commissioner are conclusive, so long as they are supported by substantial evidence.  42 U.S.C.S. § 405(g); *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). Substantial evidence in this context means less than a preponderance but more than a scintilla. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009).  In other words, it is enough that "a reasonable mind would find it adequate to support the [Commissioner's] decision."  *Id.* (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)).  In assessing whether substantial evidence exists, the Court considers evidence that detracts from the Commissioner's decision as well as evidence that supports it.  *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).  The Court cannot reverse the Commissioner's decision merely because substantial evidence may also support an opposite conclusion.  *Slusser*, 557 F.3d, at 925.

### III.    Discussion

Applying the first step, the ALJ found that Goins had not been engaged in substantial gainful activity since January 2022 (Dkt. No. 6, at 20).

Applying the second step, the ALJ found that Goins's rheumatoid arthritis, but not his depression, was a severe impairment that met the duration requirement (*Id.*, at 21).  To support the

2

decision that Goins's depression is not a severe impairment, the ALJ discussed:  (1) Goins's

psychological consultative examination which described pain that limited his activities; (2) a report

from Goins's primary physician who offered Goins medication for depression, which Goins

declined; and (3) Goins's testimony that he preferred not to go to counseling to avoid stigma (*Id.*).

The ALJ thus concluded that the mental impairment caused no more than a mild limitation and

that the evidence did not otherwise indicate more than a minimal limitation in Goins's ability to

do basic work activities (*Id.*).

Applying the third step, the ALJ found that Goins's rheumatoid arthritis did not meet or

equal the severity of a listed impairment (*Id.*, at 22).  To support this decision, the ALJ discussed:

(1) forms signed by Brian Blair, M.D., and Swetha Boddeda, M.D., which stated that Goins's

condition met the listed impairment (*Id.*, at 693–96, 737–40); (2) Dr. Boddeda's September 2022

report that discussed Goins's stiffness in his joints getting better throughout the day (*Id.* at 565);

(3) Dr. Blair's report in April 2023 reporting that Goins's medication is helping (*Id.*, at 643); (4)

Dr. Blair's report in May 2023 for a one month follow up stating that Goins is doing well (*Id.*, at

650); and (5) Dr. Boddeda's January 2024 report that stated Goins had started a steroid and that

Goins's medication regimen was still working well for him (*Id.*, at 705).  The ALJ was "not

convinced that [Goins's] condition is as serious as meeting that listing," despite the doctors'

boilerplate forms stating that Goins did meet the standard of the listing (*Id.*, at 22).

Applying the fourth step, the ALJ found that Goins was unable to perform any past relevant

work (*Id.*, at 26).

Applying the fifth step, the ALJ found that, based on Goins's age, education, work

experience, and residual functional capacity, significant numbers of jobs that Goins could perform

3

existed in the national economy and that, therefore, Goins was not disabled under the Social Security Act (*Id.*, at 26).

The ALJ determined that Goins was 41 at the onset of his rheumatoid arthritis, had a high school diploma, and was a heavy equipment operator and pole inspector (*Id.*).

As to Goins's residual functional capacity, the ALJ determined that Goins had the capacity to perform sedentary work, so long as that work excluded climbing ladders, ropes, and scaffolds, and only occasionally required climbing ramps and stairs, stooping, bending, kneeling, crawling, crouching, being exposed to hazards, dangerous machinery or equipment, and unprotected heights (*Id.*, at 22).  In reaching this conclusion, the ALJ stated that he considered:  (1) all Goins's symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence; and (2) the medical opinion(s) and prior administrative medical finding(s) (*Id.*).  While the ALJ found that Goins's impairments could reasonably be expected to cause the alleged symptoms, the ALJ found that the medical records established inconsistent data as to the intensity, persistence, and limiting effects of his symptoms (*Id.*, at 23–25).  Therefore, the ALJ stated, sedentary work with additional restrictions was the appropriate result of Goins's residual functional capacity assessment (*Id.*, at 25).

Applying Goins's age, education, work, experience, and residual functional capacity, the ALJ then determined that Goins was capable of making a successful adjustment to other work that exists in significant numbers in the national economy and, therefore, is not disabled under the Social Security Act (*Id.*, at 27).  To support this finding, the ALJ utilized:  (1) a vocational expert's testimony; and (2) information contained in the Dictionary of Occupational Titles (*Id.*).  The vocational expert testified that Goins was qualified for jobs that existed in significant numbers in the national economy (*Id.*, at 27, 70–74).

Although Goins makes several overlapping objections under six headings, all of which this Court has considered, Goins ultimately argues with his objections that: (1) the ALJ considered only selective parts of the record rather than the whole, specifically ignoring third party statements, Goins's own statements, evidence of severe symptoms, and evidence of job preclusion; (2) the ALJ improperly weighed the evidence presented regarding the doctors' credibility and a competing source's expertise, instead applying the ALJ's own purported expertise; (3) the ALJ's residual function capacity assessment was incorrect since the ALJ did not analyze and explain how he used critical evidence; and (4) the ALJ was incorrect in determining that Goins was capable of making a successful adjustment to other work because the ALJ ignored evidence of severe symptoms and job preclusion (Dkt. No. 14).

### A.    Consideration Of The Record As A Whole

Goins objects that the ALJ considered only selective parts of the record rather than the whole, specifically ignoring third party statements and Goins's own statements (*Id.*, at 3, 9–10).

Preliminarily, to the extent Goins argues that the ALJ must address each piece of evidence in his findings, he is mistaken (*Id.*, at 2, 5, 7–8). *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) ("An ALJ is not required to discuss every piece of evidence submitted"). Similarly, Goins's argument that the ALJ must provide more specific citations to prove he assessed the entire record is also incorrect. *England v. Astrue*, 490 F.3d 1017, 1022 (8th Cir. 2007) ("failure to cite specific evidence does not indicate that it was not considered").

It is clear that the ALJ reviewed the administrative record as a whole. For example, in reaching the decision, the ALJ refers to evidence found throughout the record including Dr. Blair and Dr. Boddeda's form declarations, Dr. Blair and Dr. Boddeda's statements in Goins's records, Goins's statements as recorded by his doctors in his medical records, Goins's medication, Goins's

testimony, Goins's wife's testimony, x-ray results, state agency medical consultant opinions, Goins's relevant work history, vocational expert testimony, and the Dictionary of Occupational Titles (Dkt. No. 6, at 20–27).

Goins argues specifically that the ALJ did not "even address third-party and witness statements, including from Mr. Goins himself" (Dkt. No. 14, at 9–10). The ALJ's decision, however, clearly states:

> At the hearing, [Goins] testified that he has pain in his joints. He cannot lift any weight because he has knots in his fingers. He has taken several medications for rheumatoid arthritis. It is not getting better. It is getting worse. Weather affects his joint pain. On a scale of 1 to 10, his pain minus weather changes and taking his medication, his pain is about a 6 and 7 ½ or 8 with weather changes. His hands are a primary source of his pain, right worse than left. He has numbness in his fingers. If he needed to type something on a keyboard, he could not do it. He cannot reach and lift overhead with his arms. He has not taken and is not taking any medications for mental health (hearing testimony).

(*Id.*, at 23).

The ALJ then considered Goins's wife's testimony, stating:

> Jennifer Goins, the claimant's wife, said that the claimant's testimony was not overstated or exaggerated. The claimant has difficulty concentrating and a bad memory. His rheumatoid arthritis condition is severe, and it has gotten worse (witness testimony)

(*Id.*).

Though there are also statements made by Goins's child and Goins's aunt in the record that the ALJ did not specifically address (Dkt. No. 6, at 358, 359), an "ALJ is not required to discuss every piece of evidence submitted." *Hensley,* 829 F.3d at 932. Having reviewed the Recommendation, the objections, and the record as a whole, the Court is satisfied that the ALJ considered the record as a whole and specifically acknowledged Goins's testimony and the testimony of third parties. The Court remains convinced, based on its *de novo* review, that there is substantial evidence to support the ALJ's determination. Goins's objection is therefore without merit.

### B.   Weight Given To Medical Evidence

Goins objects that, in applying step-three of the ALJ's analysis, the ALJ applied his own expertise and improperly weighed the evidence presented regarding Dr. Blair and Dr. Boddeda's credibility and a competing source's expertise (Dkt. No. 14, at 2, 5).  The opinion of a treating physician is generally afforded "controlling weight if that opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."  *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)).  Where an ALJ assigns "less than controlling weight to the opinion of a treating source, the ALJ must 'give good reasons' for doing so."  *Id.* (quoting *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012)).  Good reasons for assigning lesser weight to the opinion of a treating source "exist where the treating physician's opinions are themselves inconsistent, or where other medical assessments are supported by better or more thorough medical evidence."  *Id.* (internal citations omitted).Here, the ALJ reasonably discounted the weight of Dr. Blair and Dr. Boddeda's statements due to inconsistencies between the statements—which were solicited after the ALJ's hearing, while the record was held open for submission of rheumatology records—and the doctors' medical notes (Dkt. No. 6, at 25).  The identical boilerplate forms Dr. Blair and Dr. Boddeda signed do not explain which category they believe Goins fits into or the basis for this belief (*Id.*, at 694, 728).  Instead, they state simply that it is their belief that Goins satisfies one of the four categories provided in the form (*Id.*).  As pointed out by the ALJ and in the Recommendation, there are several facts in their medical records which do not support Dr. Blair and Dr. Boddeda's conclusion (Dkt. Nos. 6, at 17; 11, at 4).

Goins asked Dr. Blair in October 2022 to put him back on a steroid because "he has to be able to take care of his cattle" (Dkt. No. 6, at 546).  In January 2023, Goins reported to Dr. Blair

that "he does some walking and rides his tractor" (*Id.*, at 536).  Also in 2023, Dr. Blair reported

that:  (1) Goins's rheumatoid arthritis was doing better the week of Goins's April visit (*Id.*, at 643);

(2) Goins was doing well on his May and June visits in relation to his rheumatoid arthritis (*Id.*, at

650, 657); and (3)  Goins was doing well on his July visit with his current rheumatoid arthritis

medication regimen (*Id.*, at 663).  In September 2023, Goins told Dr. Blair that he received a good

report related to his rheumatoid arthritis (*Id.*, at 678), and in October 2023, Goins "stat[ed] he has

no complaints today" about his rheumatoid arthritis to Dr. Blair (*Id.*, at 687).

Goins reported to Dr. Boddeda, in September 2022, that he "spent all day running the

tractor" which too one to two days to recover (*Id.*, at 522), "spent around 3 hours bushhogging"

which resulted in pain the next day (*Id.*), and that with activity, "stiffness gets better" and "pain

gets worse" (*Id.*, at 565).  X-rays taken in September 2022 did not show any significant joint

damage, no periarticular erosions, no fractures, no acute diseases, and normal joint spaces in the

right hand, and only mild osteoarthritis in the index and middle fingers of the left hand (*Id.*, at

565–66).  On May 15, 2023, Dr. Boddeda stated that Goins's regimen implemented on February

15, 2023, "seems to be working for him" (*Id.*, at 595).  Although Goins still experienced

"intermittent flairs," Dr. Boddeda confirmed in August 2023 and again in January 2024 that the

regimen was working well for Goins (*Id.,* at 705).

It is clear from the record that Goins was being treated for his rheumatoid arthritis and that

the rheumatoid arthritis was affecting his daily life (*see Id.*, at 540, 541, 578).  However, there are

sufficient inconsistencies between Dr. Blair and Dr. Boddeda's medical notes and their opinions

written on identical boilerplate forms for the ALJ to conclude that forms should not have

controlling weight when deciding if Goins's medical condition met the listing requirement.  In

explaining his reasons for discounting Dr. Blair and Dr. Boddeda's written statements, the ALJ

cited the doctors' medical notes, pointing out that Goins had reported doing physical activity such as "spending all day riding his tractor," and "spen[ding] around 3 hours bushhogging" (*Id.*, at 24). Further, the ALJ explained, both doctors' most recent medical entries stated that Goins had received good reports about his rheumatoid arthritis and that Goins was doing well on his new regimen (*Id.*, at 687, 705). Therefore, the ALJ articulated sufficiently good reasons for discounting Dr. Blair and Dr. Boddeda's opinions on the boilerplate forms.

Goins's argument that the ALJ improperly relied on the testimony of a "competing source"—presumably the state agency medical consultants—also fails. The ALJ specifically found that the testimony Goins complains was given too much weight was only "partially persuasive," and the ALJ found that the state agency medical consultants' opinions were also "not consistent with the record as a whole" (*Id.*, at 25). Thus, while the ALJ considered the competing source's testimony, the ALJ did not improperly rely on such testimony, instead finding it only partially persuasive and considering it among other facts and the record as a whole.

Goins's argument that the ALJ improperly relied on his own opinion is similarly without merit. Because the ALJ must assess the evidence in front of him, the ALJ necessarily must apply his own reasoning to determine whether a doctor's statements are consistent with the doctor's records in order to assess the credibility of the statements. While an ALJ uses medical sources to assess the nature and severity of an individual's impairment, final responsibility for deciding the issue lies with the ALJ, not a medical professional. 20 C.F.R. §§ 416.927(d)(2). Thus, the ALJ did not improperly rely on his own opinion by assessing the evidence in front of him in deciding how much weight to give certain pieces of evidence.

Because the ALJ provided reasons for the discounting of Dr. Blair and Dr. Boddeda's statement that Goins meets the eligibility requirement and because there is substantial evidence to

support the ALJ's conclusion on this point, Goins's objection is without merit.  The Court remains convinced, based on its *de novo* review, that there is substantial evidence to support the ALJ's determination.

### C.      Residual Function Capacity Assessment

Goins also objects and asserts that, in assessing Goin's residual function capacity in step five of the ALJ's analysis, the ALJ came to an incorrect conclusion since the ALJ did not analyze and explain how he used critical evidence (Dkt. No. 14, at 2–5).  Goins maintains that the critical evidence includes:  (1) Goins's medical record symptoms; (2) Goins's statements of missing work in Goins's arthritis medical assessment questionnaire; and (3) Dr. Blair's statement that Goins should rarely twist, bend, crouch, or climb ladders and stairs, and needed limitations on reaching, handling, fingering, and use of hands, fingers, and arms (*Id.*, at 3–4).

As discussed, the ALJ considered Goins's medical records and symptoms (Dkt. No 6, at 22–26).  Similarly, the fact that the ALJ considered Dr. Blair's statements is evident in the ALJ's conclusion that Goins could perform sedentary work that excludes "ladders, ropes, scaffolds" and only occasionally requires Goins to "stop, bend, kneel, crawl, crouch." (*Id.*, at 22).  While the ALJ did not specifically cite Goins's arthritis medical assessment questionnaire that Goins himself filled out, the ALJ clearly listened to, considered, and cited the testimony of Goins at the hearing, as well as considered and cited the records of Goins's doctors.  An ALJ "is not required to discuss every piece of evidence submitted." *Hensley*, 829 F.3d at 932.

Contrary to Goins's argument, there is substantial evidence to support the ALJ's residual function capacity assessment.  To be specific, the ALJ relied on:  (1) Dr. Blair and Dr. Boddeda's medical notes; (2) Goins's and Goins's wife's testimony regarding Goins's symptoms; and (3) the opinions of state agency medical consultants (Dkt No. 6, at 22–26).  The ALJ adequately explained

how he used this evidence and how he reached his conclusion.  Though Goins points to other evidence in the record that would support a different result, the Court cannot reverse the ALJ's decision merely because substantial evidence may also support an opposite conclusion.  *Slusser*, 557 F.3d, at 925.  The Court remains convinced, based on its *de novo* review, that there is substantial evidence to support the ALJ's determination.  Therefore, Goins's objection is without merit.

### D.      Job Preclusion

Finally, Goins argues that the ALJ was incorrect in determining that Goins was capable of making a successful adjustment to other work that exists in significant numbers in the national economy because the ALJ "ignore[d] evidence of severe symptoms and job preclusion in the full record" (Dkt. No. 14, at 5).

The ALJ's decision, however, shows that he not only considered but acknowledged the "medical opinions, personal testimony, and vocational expert" evidence before him (*Id.*, at 6).  As to Goins's symptoms, as discussed above, the ALJ considered Goins's testimony and medical records—which the ALJ discussed in the decision—and there is substantial evidence to support the ALJ's conclusion that Goins could perform sedentary work with restrictions based on medical records showing that Goins was doing well on his medication treatment, had varying pain levels, had mild osteoarthritis in only one hand, and was doing chores such as running a tractor all day and performing three hours of bushhogging (Dkt. No. 6, at 23–25).

As to job preclusion, Goins argues that because the ALJ did not specifically address one piece of the vocational expert's testimony in the ALJ's decision—that a hypothetical individual who needed a few days off per month, a few unscheduled breaks per month, or was less productive than other employees would more than likely not maintain competitive employment—the ALJ has

11

failed to consider the entire record (*Id.*, at 74–77). However, in addition to answering Goins's hypothetical question, the vocational expert also stated that an individual with Goins's age, education, work experience, residential functional capacity, and limitations would be able to perform sedentary, unskilled jobs such as a credit clerk and surveillance systems monitor (*Id.*, at 72–77). The vocational expert then testified that many of these jobs existed in the national economy (*Id.*, at 71–73).

It is clear that the ALJ reached his decision based on the vocational expert's testimony on "whether jobs exist in the national economy for an individual with [Goins's] age, education, work experience, and residual functional capacity" (*Id.*, at 26). Though Goins points to other evidence in the record, the Court cannot reverse the ALJ's decision merely because substantial evidence may also support an opposite conclusion. *Slusser*, 557 F.3d, at 925. The Court remains convinced, based on its *de novo* review, that there is substantial evidence to support the ALJ's determination Therefore, Goins's objection on this point is without merit.

Although Goins believes that the ALJ gave incorrect weight to certain evidence, Goins is unable to show that the ALJ's decision was not supported by substantial evidence.

## IV.    Conclusion

For the foregoing reasons, the Court:

(1)    affirms the final decision of the Commissioner; and

(2)    dismisses Goins's complaint with prejudice.

It is so ordered this 16th day of March, 2026.

_Kristine G. Baker_

12

Kristine G. Baker
Chief United States District Judge